This court is now in session.  315-0755, Consolidated, 315-0303, Neufairfield Homeowners Association, appelled by Thomas Coulis v. Kevin and Melissa Wagner, and kids under 12, day care aide, appellates by Gary Mueller, and Stephen and Denise Kirby, and Patricia Manor, appellates by Scott Hyde. Good afternoon, your honors. Thomas Coulis for the plaintiff appellants. The plaintiffs are requesting that this court reverse the state court's findings that summary judgment in favor of the defendants was appropriate for the following reasons. One, there exists a genuine issue of material fact as to whether the defendants violated the intent of the developers. Two, there is a genuine issue of material fact as to whether or not customers or the public frequent the property. And three, whether or not the comings and goings of these customers violate Neufairfield's purpose. This appeal was timely filed in jurisdictions appropriate pursuant to Illinois Supreme Court Rule 303. The appropriate standard of review is de novo. The standard of review regarding summary judgment is to determine if the trial court properly decided there were no material issues of fact and the judgment was correct as a matter of law. And that's Johnson v. Tri-City, 217 Illap 3rd, 388. The plaintiff is a homeowners association for a home development known as Neufairfield. The plaintiff is a general not-for-profit, co-incorporated in Illinois, and every owner of a few simple interests to a lot within Neufairfield is a member of that homeowners association. The covenants and restrictions were recorded in Will County in 2004. The purpose of Neufairfield is to create a residential single-family home development. Section 3.1 of the declaration states in relevant part that all lots shall be used only for single-family dwellings. Section 3.12 states that the restriction in 3.1 shall not, however, be construed in a manner to prohibit an owner from basically maintaining personal business or non-public business within his or her unit. For example, maintaining his or her professional library therein, keeping his or her personal business records or accounts, handling the personal or professional telephone calls or correspondence therefrom, operating a home-based business but only if the business is conducted within the residence, the business is not prohibited by ordinance or regulation, and no motor vehicle with business markings is parked on the lot or common area overnight. It has to be enclosed in the garage with the garage door shut. Such uses are expressly declared customarily incident to principal residential use and not a violation of that said section. However, Section 3.13 clarifies that by saying no commercial activities of any kind whatsoever shall be conducted in any building or any portion of the property except as provided in Section 3.12 hereof, no such activity shall require or allow customers of the public to frequent the property for such home occupation. Let me just repeat that. Allow customers or the public to frequent the property for such home occupation. In September of 2013, Kevin Wagner purchased his property 2719 Great Meadows Drive in Joliet, Illinois. The address is a lot within New Fairfield. Kevin and his wife Melissa reside in the residence and operate a daycare from that residence. The daycare is a home-based business. The daycare cares for as many as seven children. It provides care between 6 a.m. and 6.30 p.m. Monday through Friday. There is only one entrance into and out of New Fairfield subdivision. So daycare customers must go in and out through the one road. Prior to the defendant purchasing his residence, an agent from the plaintiff I have a question about that. Are most, are all the customers, but people who use the daycare, are they all from out of the subdivision? I believe it's mixed. So some are, some aren't. Some are, some are not. Is the word frequent defined? The word frequent is not defined in the declaration. But there can only be one of two definitions. Either the connotation, which is the common meaning, and that is frequent or often or regularly, or the, I'm sorry, that's the denotation. The connotation is that like you would frequent an establishment, like regularly go there, versus the denotation, which is to occur often or regularly. And the judge, the state court judge, did cite that definition in his written opinion. I'll get there in a few minutes. But, you know, the section 313 that you refer to, it says except as 312, you know, as activities in 312, and there's no specific definition except using the dictionary, I guess, for some of the language used in 312, 313, correct? Correct. But I think no matter what the definition is, either the connotation or the denotation, we should prevail. Whether you use the standard common meaning, which is to regularly go to, or whether you use the dictionary English definition of to occur often. Well, it says no commercial activities of any kind whatever shall be conducted in any building except as provided in section 312. 312 allows the people to operate a home-based business. Correct. Because if you have a business, you have clients, customers, something. But not that frequent the property. Right? I may have a business, but I don't have customers coming to my doorstep every day. I may do it electronically. I may do it in writing. There's a number of different ways that I can operate a business without having the public come to my home. If people come to the home twice a day, is that frequent or is that infrequent? One person or multiple people. If it's one person, it's probably not frequent. If it's multiple people, I would say it's frequent. It says customers or the public frequent the property. Correct. So it anticipates that there are going to be customers and the public. When do they frequent the property? In the morning and in the evening. They're there all day. Customers are there all day. Kids. Let's do the math. Most defendants are licensed to have 15 children as customers in their daycares. Let's assume half of them come in cars. That's eight children. Eight children are picked up in cars at the end of the day. That's 16 unique visits a day. That's 80 per week. It's 4,160 per year. That's half of what the testimony was as to whether or not people come to the property or not. The other thing is there's a third daycare that's operating. So there's actually more than 16 kids coming and going every day. That case has been stayed depending on the outcome of this appeal. So there's, you know, potentially another 25 kids. I mean, a total of 25 kids. Are these children confined to these residences that are operating the daycare? Or are they in the backyard with jungle gyms and fenced off areas? I'm assuming they're outside at some time, but that's not part of the record. I'm not familiar with that part. Should I go on? All right. So back to the court. Frequent is defined by the state court in the Webster's New World Dictionary college edition as constant, habitual, or to go constantly. The numbers just don't add up to anything but frequent. Summary judgment is proper only where when viewed in the light most favorable to the nonmoving party, New Fairfield, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Let me repeat that again. Summary judgment is proper only where when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to material fact. What's material fact? Well, I think frequency, right? I don't think the court can say based on his opinion. In the court order, he said... Well, he refers to his own personal experience. Right, and first of all, that's a school. He's dropping his children off at a school every day, completely different than in a residential neighborhood. I don't think that was appropriate. I think he's wrong. I think he misapplied the facts of the case. I think summary judgment is a drastic measure and should only be granted if the movement's right to judgment is clear and free from doubt. In this case, I don't think it is free from doubt. I don't think it's clear. Well, what do you have? You've got somebody dropping a child off, or children off. Picking them up. Right. And you've got the children there at the... Home all day. Yeah. Every day. It's obviously caused neighbor's consternation. They've complained to the management association. That's the affidavit, right? Right. What do you have besides the affidavit? The property manager. On the record or in general? Yeah, yeah. I mean, you have to have something there. You have an affidavit. What does that affidavit say? The affidavit is... Can I grab it? He's the property manager. He says he's received complaints about the neighbors, from neighbors, about the children at the daycare. Okay, so we don't know whether it's the traffic or whether it's the screaming kids out in the backyard, right? We don't know that, no. Let me ask a question. Would you want to live next to a daycare? It's like asking if you want to live next to... It is, but that was actually going to be my closing sentence. But you guys got me there. What's the intent of this covenant? I think the intent of the covenant is to maintain property values, provide for a quiet neighborhood, and to allow people to conduct business within their home but not a business where the public is coming in and out of their home. So the vision was someone was going to do work in the home and never seeing a customer or client in the home? Not never, but not regularly. Well, what about this... I don't know if it's there in your argument, or maybe you'll bring it up. The covenant is to have a base of business in the home and there's no evidence in this record, apparently, that the business is being conducted out of the home, is there? You said it's likely it is? There is no evidence on the plaintiff's side, no. Seems to be an error there, right? If it's true, the affidavit seems to be... Because if that were the case and you had an affidavit there, it would seem to me that that's not allowed on that basis in any way. But, I mean, somebody else's lawyer would. Right. And the question that we have, because if people are concerned and upset about that, that's not relevant to whether or not they violated the intent of the covenant, is it? If people are concerned about it, is that evidence that the covenant has been violated? No. I mean, you know, when you talk about the complaints and so forth that were received, that's really collateral to whether or not the covenant's been violated. Correct. But it is evidence that there is conduct going on that's violative of the covenant. Right? The complaint is not direct evidence, but it's evidence that some activity is going on, and then when we investigated the activity, it was determined that it was a violation of the covenant. The Condor Board is allowed to interpret its rules. When we're interpreting this, do we read this in a way that favors the homeowner or in a way that favors the condo association when you're placing limitations on the use of property? The present action must be construed from within the framework of a common interest community governed by a recorded declaration. A covenant is to be construed so as to give effect to the actual intent of the parties when the covenant was made, and that's Forrest Glenn, Community Homeowners v. Nolan, 104 Ill-At-Third 108. Even though a covenant is strictly construed in favor of free use of the property, there's a rule it may not defeat the obvious purpose of the restriction or the clear intent of the parties, and that's also Forrest Glenn. And that's the obvious intent and clear intent. I think so. If you read those two in conjunction, Section 312 and 313, no commercial activity of any kind whatsoever shall be conducted in any building or in any portion of the property except as provided in Section 312 hereof. 312 says the restriction in 3.1 shall not, however, be construed in such a manner as to prohibit an owner from basically doing personal things, and that activity described in 3.1 shall not or shall require, no such activity described in 3.12 shall require or allow customers or the public to frequent the property for such home occupation. Operate a home-based business, but only if the business is conducted within the residence and not prohibited by ordinances or regulations of the city. Such uses are expressly declared customarily incident to the principal residential use, not in violation of the said section. Right. A daycare is not a principal use of a residence. I absolutely agree. Well, I'm reading it. I'm not making a statement. I'm just reading the 3.12. You know, additionally, you know, we never got the chance to even get testimony from the developer. We never got the opportunity to do, to present the contradictory facts. That's why I don't think summary judgment's appropriate. Do you think pro-evidence is appropriate? Is there an ambiguity in this to you? No. I don't think it's ambiguous at all. So would pro-evidence from the developer be allowed into evidence? If you don't think there's an ambiguity. I don't know if the court would allow it. That's my opinion. I think the court thinks it is ambiguous. So I think the court would probably allow the developer's intent to be, or his testimony be allowed. I think the section 3.12 or 3.13 is very clear. And I think the definition of frequent is very clear. And I don't think, no matter what definition of frequent you use, I think both of them are met in this situation that would preclude them from operating the business. Whether it's frequent, regularly attending, or whether it's frequent multiple times, I think both of those comply. Thank you. Bernie? Thank you. Mr. Pyles, you will have 12 minutes. Yes. And Mr. Mueller, three? Yes. May it please the court, Scott Pyles on behalf of Denise Gurley and the Wagners in this case. Justices, the plaintiff has a high burden in this case for two reasons. Number one, they have to show that the covenants that were in place in this particular case, that they weren't overly restrictive to infringe on the property rights or the free use of the property. And if there is an interpretation of the covenants, this is strictly construed against the homeowners association and in favor of the homeowners and the free use of the property. And the second issue that they have to overcome in this particular case is that in terms of what was done here, the covenants allow my clients and Mr. Mueller's clients to operate a home-based business, a state care. The homeowners association at some point agreed because the business was advertised in their business directory for the homeowners association, and that's in the record. Now, what we have here is . . . There's a business directory for what? There is a business directory for the homeowners association. The homeowners association advertised the various businesses of people who lived in the new Fairfield subdivision. My client's business was advertised in this business directory  That's in the record. It's attached to . . . So you're telling me that there's a business directory that says within this homeowners subdivision there's all these various businesses that you can free fund? Or is it a business directory for the community at large? It's a business directory of . . . that's put out by the homeowners association of businesses that are either owned or operated by the residents of the new Fairfield subdivision, which my client was a member. The other people that were in this directory were also members of the new Fairfield homeowners association. And that's attached to our motion. I submit that if they were doing something they weren't supposed to be doing, the homeowners association wouldn't be advertising that business within their business directory. Secondly, in terms of whether or not summary judgment was proper, there was some discussion in the appellate briefs about we should have had an opportunity to present the developer's intent. Problem is, there was no attempt to address the developer's intent at the trial court. There was no evidence of the developer's intent in the form of an affidavit that summary judgment. There was no attempt by the plaintiff to put forward anything with regard to what the developer's intent, because they didn't talk about it at the trial court.  the developer's intent was here on appeal. And we submit that that issue has been waived. Or forfeited. Forfeited, correct. We didn't talk about, if they didn't ask for it at the trial court, how was the trial court able to consider it? Now, if you look in terms of what the covenants say, they expressly permit a home-based business. Now, there's an affidavit that I submitted from my client who operates the daycare. She says that the kids are kept wholly within the subject property. That isn't what the covenant says, though. Pardon me? Within the residence. You're talking property. I don't see that in the covenant. Well... But only if the business is conducted within the residence. That's not property. Justice Holdren, that's fair. I guess my affidavit is poorly worded. I think that there is suggestion in the record, however, that the kids were kept in the house, not on the property. But do you agree or concede that, according to that covenant, they have to be? Or you're in violation? I wouldn't concede that. Because I don't know if the subject property, if that meaning the area we're talking about, the building of the home itself. Just within the residence. I don't know any other definition. I can be like the trial judge and go to Merriam-Webster's. I would not concede that. Okay. I would not concede that point. You know, I look at what... You're saying the residence can include the backyard? Yes. Property. Yeah, it can include the property, the lot, the residence, curtilage, the different terms that can be used to define where, where a property person in, you know, Fourth Amendment, you know, aside, there's lots of different things there. And I wouldn't concede that. Fourth Amendment now, it's really the house. Well, I suppose you can just turn to a particular case and find out what something means. But in terms of what we have here, Section 3-12 clearly allows a home-based business. The plaintiffs don't dispute that we meet the three qualifications of 3-12, that we don't violate any ordinances, that it's kept in the residence, and that we don't have any vehicles or markings. So they must agree with you. Yes. On the definition of what entails residence, right? That's correct. They focus their argument on Section 3-13. And as the trial court correctly notes, I would submit to the court that Section 3.13 doesn't even apply to this case. If you look at 3.12, it's just lays out what is, what it defines as a home-based business. Section 3.13 talks about other commercial activities. And it says that we don't allow any commercial activities except those allowed in 3.12. And then it talks about that they don't want any people, customers pre-pointing the property. Now I would submit to you that that section doesn't apply. How do you get there for that? If you look at the exception 3.13, it says that we don't allow any commercial activities except that is allowed in 3.12. Then there's a semicolon, and then it talks about that no, and I don't have the exact wordings, I don't have it sitting here in front of me, but it does talk about that there should be no commercial activities where the public or customers are to be pre-pointing the property. It says no such activities, it says no commercial activities of any kind except, you know, I'm skipping things, as provided in Section 3.12, you're a semicolon, no such activities, such activities, shall require or allow customers or public to pre-point the property for such home occupation. I would submit, are they referring to the other commercial activities that are in the header? I think there's a little bit of an ambiguity there. And if there is an ambiguity, it is to be construed strictly against the problem. Where is the ambiguity? It says no commercial activities of any kind except as provided in 3.12. Okay, so 3.12 is listing commercial activities. And then it says no such activities. What does such, I fail to see an ambiguity. I say such refers to other commercial activities that are prohibited, not the ones that are allowed under Section 3.12, but we're talking about the other commercial activities that are strictly prohibited by Section 3.13. That's hard for me to understand because you've got activities that can be allowed that are prohibited. And then you've got some activities that are allowed under 3.12. So when they refer to no such activities shall require or allow customers or the public to frequent the property for such home occupation, they're talking about, aren't they talking about the activities that are being allowed, but there's a limit on how frequent the people can be there? I would suggest that if that limitation was supposed to be in there, why didn't they reference that as a fourth qualification in Section 3.12? Why would you even need that statement where require or allow customers or the public to frequent the property when you can't have any activity? They could be fairly well defining what they're defining as a commercial activity that's prohibited under Section 3.13, not something that's under 3.12. So you could have no commercial activity, and by the way, all those places you can have no commercial activity, you can't allow customers to frequent the place. How do you have customers when you can't allow it in the first place? I think that they were giving an example of what was not allowed. And if you look at what the trial court and its definition in searching it, it resorted to a dictionary to define the word frequent. Frequent is constant, regular, all the time. There are not people driving up like at a 7-Eleven... Now we're saying that that does modify the permissible commercial activities in 3.12. The trial court said... That seems to be the way the trial court looked at it. The trial court said there was an argument to be made, but when it took the other step and says, let's put that aside. Let's assume just for a moment, for the purposes of my order, that 3.13 does qualify the home-based businesses in 3.12. He went on to say that the frequenting the property that's talked about in 3.12 wouldn't amount to what was going on by the home-based daycare businesses that are operated by the defendants. And I think that the trial court is correct. I mean, you know, Mr. Counsel for the Plaintiffs talks about that there are literally hundreds of thousands of cars running through this 500-home subdivision, and there is a layout of all the different homes. It's a rather large development. If you look at the test or the affidavit of my client, she says that half the kids that are routinely here walk from homes in the subdivision. Now, the trial courts have disregarded that statement and said, what if there was even eight cars? The eight cars. That is the max, right? Under the licenses that are held by both the defendants in this case, they're both licensed home-daycare businesses. They are limited to a maximum of eight children. Right. And I think that the affidavit of my client says that she never at one time had that many kids there. It was typically five or six, and then a half of them came from the subdivision. So, and again, and I think the trial court is correct that this is not the same situation of somebody going through 7-Eleven and buying a Diet Coke and leaving, somebody else coming in and buying some sandwiches and leaving. That's not what's going on here. You have some kids being dropped off, and in my brief, I kind of analogize this being dropped off for a birthday party. Parents come by, drop the kids off, and then they leave. And that's what we're talking about here, and that's something that's explicitly, I think, allowed by the use of the home-daycare, a home-daycare business is explicitly allowed by Section 3.12 of the things, to allow a home-based business. And at some point, the plaintiffs didn't disagree with that because they were advertising this business in the business directory. So... But I don't think the fact that it was advertised as some kind of a stop order waiver or anything like that, do you? I'm not suggesting that. What I am suggesting is that the evidence, and it's in the record, that this home-daycare business, the Home Owners Association, were aware that my client operated a home-daycare business, advertised it in their directory. And they were aware of it, and if they didn't allow it, number one, they could say, I'm sorry, you can't allow this, but number two, they may say they allow it, they have allowed it to be advertised in their business directory. That's probably before the complaints came. Well, I will submit to you that the complaints, there's nothing in the restrictions in the government that talk about the complaints, because you might get one person that just doesn't want to hear any noise whatsoever. And I'm assuming that's not contained, and I don't think that that evidence is relevant. So, I ask that you approve the decision of the trial court. Thank you. Thank you, Mr. Biles. Excuse me, Mr. Miller. You only have three minutes. Good afternoon. May it please the Court, Counsel. My name is Gary Miller on behalf, here on behalf of the Wagoners. Long and short of this is that I was simply going to present to Your Honors our argument concerning the waiver or forfeiture of the arguments that have been previously made. There was only one reference at all concerning the intent of the developer that was in one passing moment within the oral argument of the motion for summary judgment. There was nothing in the complaint, there was nothing in the initial complaint or the amended complaint, there was nothing in any of the documentation that was prepared before the judge. It was only mentioned in passing. So, even if Your Honors were to take the bulk of the appellant's argument that it has to do with violative of the intent of the developer or even violates the purpose of the association, I would submit to you that, similar to what Justice Carter had mentioned before in questioning the appellant, if you're not going to have any of these types of businesses and if that was the intent of the developer, you would stop at 3.1. There would be no 3.12. There would be no 3.13. Clearly the intent, even if we get to that part of the argument, clearly the developer intended that there would be situations where some type of business would be allowed within the subdivision or within the association. The problem with waiver and forfeiture is really that they're just talking about whether or not they can put on evidence about the intent of the developer, and that's a separate question. Evidence doesn't have to be pled and pleadings. Correct, but I would submit, Your Honor, that I believe that they at least have to mention it at some length other than one passing sentence, which is about seven words long, to then make it their main argument here before Your Honor. This was done on a motion for separate judgment. Correct, but still the argument, I think, would have been applicable then if you're going to take the time to argue it here. I understand that Your Honors have a de novo review, but it still, I believe, is supposed to be at least have some basis for what Judge Anderson actually heard, and there was very little in our case. I am not speaking for the other case, but very little in our case concerning the intent. So we would still suggest that there's a forfeiture, but even if there is not, I go back to the argument similar to what Justice Carter was making before, which is the developer who creates this document, albeit whether it's well-written or not, really doesn't matter at this point, but he or she would have stopped at 3.1 and simply said this is a residential development. We have no commercial entities at all. There is no businesses at all. He or she did not do that. He or she then added 3.12, which specifically says we're not going to have the prohibition that everything has to be residential. We are going to allow in certain circumstances a home-based business, which is why the affidavit that I have in our case, in the motion for separate judgment, went uncontroverted by the appellant, which wasn't mentioned either. But they never had any counter to that affidavit. An affidavit simply follows the dictates of 3.12. So even if your honors were to say that there was enough presented before Judge Anderson about the intent or the purpose that is being fulfilled by the association, we would submit to you that even in that case,  There is no material issue that needs to be resolved. This matter can be resolved by a motion for summary judgment. It was resolved by a motion for summary judgment. We believe it was done appropriately. We ask you to please affirm Judge Anderson's actions. Thank you for your time. Thank you. Mr. Toulouse and Mr. Roberto. I just have a couple quick points to raise. Section 7.8 of the declaration says that the provisions of this declaration shall be liberally construed in favor of the declarant, developer, and or association to affect its purpose of creating a uniform plan for development. That is in the record. The whole declaration is in the record. I'd just like to go back to Forestland Community Homeowners Association. Are we bound by the covenant's declaration of what its purpose is or how it should be interpreted? Well, I think you are because... Do we have an overriding legal view of this? I'm going to reference Forestland Community... Which you mentioned at the outset of your argument. Correct. Go ahead. So it says, even though a covenant is strictly construed in favor of the free use of the property, the rule may not defeat the obvious purpose of the restrictions or the clear intent of the parties if it's not precisely expressed. I think the obvious intent of the parties, the builder, the homeowners association, the developer, is to create value in the property. It's to maintain a single family residential association. It's not to operate daycares where the public's coming in and out. And they try to minimize the numbers, but at the end of the day, there's three daycares being operated in there. It's a significant number of people coming in and out of the association. There's only one entrance. There's only one exit. All that traffic, except for a few that are walking, comes in and out of the main entrance to New Fairfield. What are the businesses that are allowed? I would think what is allowed is maybe some internet-based business, like an eBay sale-type company. I would think that probably an accountant who's doing tax preparation at home but has an office somewhere else is allowed where the public's not coming to his house to have their returns done. I would think... Okay, and your interpretation, can a customer or a client ever show up at the residence? Yes, just not regularly. Well, how many times? I don't have a bright line rule. I don't have a specific number, but I would think that number is somewhere below the level where complaints start to be generated. Right now, we have just one judge sitting there looking at a dictionary and looking at the affidavits and says, that's not frequent. Is that what we have? That's what we have. Who's in a better position to determine what that range of frequency or what frequency is? People living there. The people in the association. I don't know. Should the line be 3 unique visits a day? Should it be 4, 5, 6, 7? Should it be 15? Should it be 25? I don't think so. If it was capped at 3 kids a day, I'm sure probably no one's complaining. But there were complaints, and that's why we're here. Because it was obviously enough that it caused someone to be upset by the situation. I'm bothered by that a little bit because people in hindsight can be upset about it, but whether or not it violates the covenant isn't based on someone being upset or not, is it? No. You're right. But if it is a violation of the covenants, they're going to complain about it. They could complain even if it's not a violation. That's true. I agree. I mean, it's made by noise pollution. Too many screaming kids. I agree. But I think in this case it is a violation of the covenants. I think the court has misread the rule, misread the declaration. Well, I hear at this point say, you think it's a violation, but you want to get somewhere else to determine whether it is or isn't, right? Unless you want to remain with instructions, I'd be real happy if you sent the trial court a note saying you think it is frequent. I mean, did you file a summary judgment motion? Did not. There was some talk about it in our reply, but it was not an appropriate summary judgment motion. So your next step isn't going back to the trial judge, is it, if you were to prevail? If we're to prevail here, we're going to have to go back. Right, because this is just whether or not summary judgment was appropriate. That's what I'm saying, but not before that trial judge, for his determinational issue. No, I would ask for a substitution of judge, but also the rotation, I think. By the time it gets back there, it will be December or January. So you're going to leave it up to the judge ultimately, right? I think it will be a new judge by then. You're not interested in a jury? No, there's no jury trial. We didn't make a jury demand. Oh, okay. Any other questions? No. Thank you, Mr. Lewis. Thank you all. Thank you very much. We will leave this matter under advisement, get back to you with a written disposition within a short time. Thank you. And we'll now take a short recess for appearance. All rise. This court stands in recess.